## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | **Chapter 11** |
| | § | |
| **HII TECHNOLOGIES, INC., et al.** | § | **CASE NO. 15-60070** |
| | § | |
| | § | **Joint Administration Pending** |
| **Debtors** | § | |
| | § | |

### AFFIDAVIT OF LORETTA R. CROSS IN SUPPORT OF THE DEBTORS'
### CHAPTER 11 PETITIONS AND FIRST DAY RELIEF

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

Before the undersigned notary public appeared Loretta R. Cross who, after being sworn, testified as follows:

1.  My name is Loretta Cross. I am over the age of twenty-one (21), am competent to make this Affidavit, and have never been convicted of a crime. I have personal knowledge of the facts as stated in this Affidavit. I am authorized to execute this Affidavit.

2.  I currently serve as the Chief Restructuring Officer (the "CRO") of HII Technologies, Inc.; Apache Energy Services LLC, dba AES Water Solutions, and its division AES Safety Services; Sage Power Solutions, Inc.; Aqua Handling of Texas LLC, dba AquaTex; and Hamilton Investment Group (collectively, "the Debtors"). HII Technologies (herein "HIIT", "we" or the "Company") is a publicly-traded company traded on the OTC marketplace under the symbol HIIT.

3.  In my capacity as the CRO, I am familiar with the daily operations and financial conditions of HII Technologies, Inc. and its affiliates. I hereby submit this affidavit in support of the Debtors' first day motions in the above-captioned chapter 11 cases and to assist the Court and

1

McKool 1123062v5

other parties-in-interest in understanding the circumstances leading up to the commencement of these cases. Except as otherwise indicated, all facts set forth in this Affidavit are based upon my personal knowledge, my review of relevant documents, or my opinion based upon my experience, knowledge and information concerning the Debtors' operations, financial condition, and the industry as a whole. If called to testify, I would testify competently to the facts set forth herein. I am authorized by the Debtors to submit this Affidavit.

## I. Background

4.     On September 18, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code"). The Debtors continue to maintain their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' bankruptcy cases and no official committee of unsecured creditors has been established to date.

5.     The purpose of the filing is to create a recovery for the Company's stakeholders.

**A.     Debtors' Business**

6.     HIIT is a publicly-traded oilfield services company which entered the hydraulic fracturing ("frac") water management business via the acquisition of Apache Energy Services dba AES Water Solutions in September 2012. Previous to HIIT's frac water operations, the Company operated an oilfield machining and manufacturing company known as Shumate Machine Works and a proprietary industrial valve product line company known as the Hemiwedge Cartridge valve. In 2008, we sold Shumate Machine Works, and in May 2011, we sold the Hemiwedge valve product line and its assets including trademarks, and as such were required to rename the company. In August, 2011 we changed the name of Hemiwedge Industries, Inc. to "HII Technologies, Inc." in connection with selling the name and assets of our

2

oilfield valve technology that we had previously developed and commercialized.  Since the sale of its oilfield valve product line in May 2011 to a private company buyer, our firm developed a focus on oilfield services.  We believed the frac water, portable oilfield power and safety consultancy market areas as necessary services to support Exploration and Production ("E&P") company operators with their domestic U.S. horizontal drilling and related hydraulic fracturing activities.  HIIT corporate office is at 8588 Katy Freeway, Suite 430, Houston, Texas, 77024, and its most recent regions of operations included Texas, Oklahoma, Ohio and West Virginia.  The Company also endeavored to commercialize certain new technologies in frac water management to complement its legacy services to build a sustained market advantage.

7.      In September 2012, we purchased 100% of the membership interests of Apache Energy Services, LLC dba AES Water Solutions.  AES Water Solutions manages the logistical and transportation associated with water used typically during hydraulic fracturing and completion of horizontally drilled oil and gas wells.   In December 2012, we started the Company's oilfield power subsidiary which does business as South Texas Power (" STP").  In 2014, we changed the name of the power division from South Texas Power to Sage Power Solutions. Sage operated a fleet of mobile generators, light towers and related oilfield rental equipment for in-field power where remote locations provide little or no existing electrical infrastructure.   In January 2013, we started AES Safety Services which provided safety consulting services to oil and gas operating companies in Texas, Ohio and West Virginia. AES Safety Services provided in-classroom training for SafeLand, Hydrogen Sulfide ("$H_2S$") safety training, and other certification programs. In November 2013, we purchased we purchased 100% of the membership interests of Aqua Handling of Texas, LLC dba AquaTex, which was a frac water transfer company that provided lay flat, hose and aluminum pipe for the high volume

3

transfer of salt and fresh water necessary for hydraulic fracturing operations. In August 12, 2014, we purchased 100% of the capital stock of Hamilton Investment Group of Guthrie Oklahoma, ("Hamilton") which performed frac water transfer services in Oklahoma.

8. As the market for frac water management and related services grew in 2013 and 2014, HIIT grew its annual revenues from approximately $14.5 million to approximately $35 million, respectively. Full year 2014 HIIT revenues, on a pro forma basis inclusive of full-year Hamilton results, were $44 million and EBITDA was $6 million. HIIT entered into a lending agreement with Heartland Bank ("Heartland") and McLarty Capital Partners ("McLarty") (collectively, the "Lenders"), with Heartland acting as Agent, on August 12, 2014, establishing a $6 million accounts receivable purchased agreement line of credit and a $12 million term loan. The line of credit refinanced a previous line of credit with a previous asset based lender as a revolving line borrowing against receivables. The new term loan was sought to pay for the $9 million cash payment due at closing for the Hamilton acquisition, acquisition expenses and for working capital purposes. Heartland, as agent, syndicated the line of credit with two other banks. Heartland also syndicated the term loan with McLarty, a SBIC fund whereby Heartland, as agent, participated in approximately 1/3rd of the term loan and McLarty participated in the remainder.

9. The 2014 pro forma EBITDA actual results, determined after January 2015, were below original estimates and did not achieve the needed financial ratios within the loan agreements. The Company was in default of its loan agreements by February 2015.

10. During 2015 the oilfield services market continued to decline in activity and pricing. Consecutive operating losses at HIIT developed monthly in 2015. The Company responded by shutting down non-profitable divisions and areas with an objective to move its idle

equipment to remaining active areas including the Permian basin in West Texas. This "shrink-to-the-core" strategy provided for one remaining division known as AES Water Solutions' Flow back operations, located near Midland, Texas.

11.     In the first quarter of 2015, the Company engaged Roth Capital, broker dealer, to assist in raising new capital via a private placement in an effort to help resolve the Company's default issues related to EBITDA results and other covenants.

12.     Notwithstanding the substantial, industry-wide oilfield activity decline which began in late 2014 and continued into 2015, HIIT was able to close on a Series B convertible preferred equity financing on May 12, 2015, in the amount of $3.05 million. The company entered into a waiver and modification agreement on May 20, 2015 with its Lenders that in connection with the Series B equity financing that the company would waive covenants for quarterly periods ending December 31, 2014 and March 31, 2015 and reset covenant ratios for the remaining quarters of 2015.

13.     Despite the preferred equity raise, the Debtors were quickly back in default. I was appointed CRO on July 30, 2015. My initial approach as CRO was to re-establish better communication with the Lenders, maintain some level of operations as an on-going business and to develop plans to perform an out-of-court restructuring of the Company.

14.     We discontinued AES and the water transfer business on September 1, 2015.

15.     While HIIT and its affiliates had approximately 103 employees at year end 2014. Today, only one employee remains at HIIT, in addition to the CRO. The company now relies on independent contractors for its home office administrative duties. Matt Flemming, the employee, receives a salary and is owed past salary compensation on a pre-petition basis. As CRO, my firm

SRR has been paid weekly in the ordinary course and has been retained for this bankruptcy filing.

**B.    Corporate Structure**

16.    HIIT's operating activity was performed entirely through its subsidiaries.   The following table illustrates the subsidiary entities and each registration state.

| Entity | Registered state and type of entity |
|---|---|
| HII Technologies, Inc. | Delaware corporation |
| Apache Energy Services, LLC. dba AES Water Solutions -and- Apache Energy Services dba AES Safety Services | Nevada LLC, wholly owned by HIIT |
| Aqua Handling of Texas, LLC dba AquaTex | Texas LLC, wholly owned by HIIT |
| Hamilton Investment Group | Oklahoma corporation, wholly owned by HIIT |
| Sage Power Solutions, Inc. | Texas corporation, wholly owned by HIIT |

**C.    Pre-petition Capital Structure of the Debtors**

17.    The subsidiaries AES Water Solutions, AES Safety Services, Sage Power Solutions, AquaTex and Hamilton are wholly-owned by HIIT.   HIIT is a publicly traded company that is owned by an estimated 350 stockholders.   Total outstanding common stock today is approximately 58 million shares of stock prior to the conversion, if completed, of Series "A" and Series "B" convertible preferred shares into common HIIT shares.   Total insider ownership is estimated at less than 20% before dilution of the convertible preferred stock.   After conversion of the preferred shares, given the floating rate exercise price of the Series B preferred, the dilution would be significant and insider ownership would be *de minimis* on a fully-diluted basis.

18.     The debtor used Convertible Preferred Stock, common stock, revolving line of credit, proceeds from a term loan, convertible debentures and equipment leases, both capital and operating leases, to finance its growth over the last three years.   A summary of Company's material capitalizations over the last three years is as follows:

i.    Convertible Debenture – Numerous accredited individual investors participated and yielded proceeds of $1 million in November 2013.

ii.   Revolving Line of Credit with Rosenthal & Rosenthal – Originally closed at $2 million credit amount; closed on June 26, 2013; raised to $5 million during the period.

iii.  Series A Convertible Preferred Financing – Numerous individual accredited investors and institutional investors participated and yielded proceeds of $4 million; closed July 8, 2014.

iv.   Heartland Bank, as Agent – Senior Credit Facility comprised of a $12 million term loan; closed August 12, 2014.

v.    Heartland Bank, as Agent – $6 million line of credit (replacing the Rosenthal LOC); closed August 12, 2014.

vi.   Series B Convertible Preferred Financing – Numerous individual accredited investors and institutional investors participated and yielded proceeds of $3.05 million; closed May 12, 2015.

19.     Pursuant to that certain senior secured credit facility (the "Facility" or "Pre-Petition Senior Loan") entered into on August 12, 2014 by and between the Debtors and Heartland Bank as Agent, consisting of two parts: (a) that certain Credit Agreement dated as of August 12, 2014, as amended and modified (the "Prepetition Credit Agreement"), by and between HII Technologies, Inc., a

McKool 1123062v5

Delaware corporation, Apache Energy Services, LLC, a Nevada limited liability company, Aqua Handling of Texas, LLC, a Texas limited liability company, Hamilton Investment Group, an Oklahoma corporation, KMHVC, Inc n/k/a Sage Power Solutions, Inc., a Texas corporation (collectively, the "Borrowers"), and Heartland Bank, an Arkansas state bank ("Heartland"), as administrative agent (the "Prepetition Agent"), and McLarty Capital Partners SBIC, L.P., a Delaware limited partnership ("MCP"), together with Heartland, as lenders  (collectively, the "Prepetition Term Lenders"); and (b) that certain Account Purchase Agreement dated as of August 12, 2014, as amended (the "Prepetition A/R Agreement" and together with the Prepetition Credit Agreement, the "Prepetition Loan Documents"), by and between HII Technologies, Inc., a Delaware corporation, Apache Energy Services, LLC, a Nevada limited liability company, Aqua Handling of Texas, LLC, a Texas limited liability company, Hamilton Investment Group, an Oklahoma corporation, KMHVC, Inc, a Texas corporation (collectively, the "A/R Borrowers") and Heartland, as administrative agent, and certain financial institutions and their successors and assigns (collectively, "Prepetition A/R Lenders", and together with the Prepetition Term Lenders, the "Prepetition Lenders"), which replaced the Debtors' previous senior secured revolving facility and was made for the purchase and sale of approved receivables in amounts not to exceed $6 million.

20.     Debtors received proceeds of $12 million under the Prepetition Credit Agreement and approximately $4.65 million under the Prepetition A/R Agreement.  The Debtors utilized $9 million to pay a portion of the purchase price for the Hamilton acquisition, approximately $4.75 million to pay off the Debtors' prior accounts receivable facility, $450,000 in commitment fees, $675,000 to fund Debtors' debt service reserve account and approximately $190,000 in other expenses related to the Facility. Debtors retained approximately $1.585 million for working capital.

McKool 1123062v5

21.     Under the original terms of the Prepetition Credit Agreement, borrowings bore interest at a rate per annum equal to WSJ prime plus a spread that ranged from 5.50% to 8.25% per annum depending on the Borrower's first lien leverage ratio (provided that at no time shall the WSJ prime be less than 4%).   The Prepetition Credit Agreement originally required monthly interest payments, quarterly principal payments of $300,000 and a balloon payment on the August 12, 2017 maturity date. The Prepetition Credit Agreement contains an accordion feature, whereby the borrowings may be increased by up to an additional $10 million upon request and agreement by the Lenders, but is not a committed amount under the facility.

22.     The Lenders had rights in the sold accounts and their proceeds.  The Debtors are and were obligated to cooperate with the Lenders in enforcing those rights.   The Debtors also had obligations to account for proceeds received and deposit proceeds into a Heartland account, among other things.

23.     On May 20, 2015 the Debtors entered into a Third Modification and Waiver Agreement of the Prepetition Credit Agreement with Heartland Bank in which the Lenders waived certain existing defaults, waived default interest, and permitted an equity raise.  Under the same agreement the interest rate was increased to a nonvariable 13.75%, and the principal payment terms were changed to monthly payments of $110,000. A balloon payment is still due on August 12, 2017 (the maturity date).

24.     Under the Prepetition A/R Agreement, all approved receivables were purchased by the lenders thereunder for the face amount of such receivable less the lender's 1.50% service charge. In addition, the Prepetition A/R Agreement requires a reserve that varies from 10%, 25%, to 50% based on the amount of the time the receivable is outstanding.

25.     The Prepetition Loan Documents were extended by numerous forbearances between July 1, 2015 and the Petition Date.  The terms of each forbearance allowed the Debtors to continue operations while they sought alternate financing and restructuring options.

26.     A list of the accounts that, as of the Petition Date, have been sold pursuant to the Prepetition A/R Agreement and that are thus not property of the estate are attached as Exhibit "1".

27.     As of the Petition Date, the Debtors were truly and justifiably indebted to the Prepetition Lenders and Prepetition Agents, without defense, counterclaim or offset of any kind, in respect of (a) principal plus accrued but unpaid interest, costs, fees and expenses, in the approximate amount of $10,292,897.22 under the Prepetition Credit Agreement; and (b) principal plus accrued but unpaid interest, costs, fees and expenses, in the approximate amount of $890,680.71 under the Prepetition A/R Agreement (collectively, the "Prepetition Secured Claims").

28.     Beginning in late 2014, the Company initiated a strategy to contract operations, focus on our core services and the Permian Basin region, and thereby reduced costs.  This stemmed losses of its marginalized satellite divisions and areas that were suffering after the price of oil crashed.

29.     Since I came on board as the CRO, the Company's relationship with the Lenders has been productive and has enabled the Company to continue to operate serving customers through the end of August 2015.  Through advancing of new loans, the Lenders have also enabled the Company to maintain a limited staff of prior employees as contract workers to facilitate an orderly shutdown of operations and corporate administration of the business.

30.     After the July 9, 2015 default, the Lenders have advanced cash funds in several amounts totaling $729,643.50 on a pre-petition basis.

McKool 1123062v5

31.     Additional access to capital is required in order to enable an orderly wind-down of the business and to execute an open sale process.  To that end, the Company has obtained an agreement with the Lenders to provide Debtor In Possession ("DIP") financing, which we believe will be sufficient to fund the Company during this bankruptcy process.  As is typical for such situations, the lender requires the protection of the bankruptcy court as a condition to advancing additional funds to the Debtors.

### III. Summary of the Debtors' Intention

32.     The purpose of the filing is to create a recovery for the Debtors' stakeholders through the sale of the Debtors' hard assets and technology-related distribution agreements to operating entities, perhaps including a plan of reorganization if feasible.

33.     Over the next seven days we will hire an auctioneer for the Debtors' assets and plan an auction process that will maximize the value of the assets.  That sales process is planned to take about 45-60 days.  With an auction planned to be held the week last week of October or first week of November

34.     We have been in discussion with a number of parties that are interested in utilizing our public shell for their ongoing businesses.  We currently are evaluating nonbinding letters of intent with various parties over this part of the recovery.  However, a plan is not guaranteed and nobody is obligated to fund a plan.  The DIP Lenders are only agreeing to fund a loan for a sale at this time.  We are also investigating other causes of action.

### IV. Facts in Support of the First Day Motions

A.     **DIP Facility**

35.     We have actively attempted to raise financing dollars from various sources over the last few weeks.  After approaching numerous parties and we have determined that the only viable option, at this time is our existing lender.

11

36.     Obtaining the DIP financing from another party was challenging due to the fact that we are no longer an operating company, the current lenders hold a lien on all our tangible and intangible assets, and the small size of the new money needed.

37.     We sought financing on better terms though discussions with factors and lenders of last resort.  We talked to several lenders who could factor/buy receivables at 18% interest with additional fees and charges and a 20% reserve.  Those factors could not act as the lender of last resort because of timing and other issues with qualifying the receivables.

38.     Unencumbered credit or alternative financing without superpriority status is not available to the Debtors.   We had engaged broker dealers and talked to lenders/factors in an effort to obtain financing.  We could not though we attempted in good faith to do so.

39.     The DIP Loan is necessary to preserve assets of the estate because, without it, there is no possibility of an orderly sale and no possibility of a plan and liquidating trust.  The DIP Lenders will consider, but are not committing to, fund a plan.  Without the DIP Loan, only the bare assets are available for creditors in a less orderly liquidation.

40.     The terms of the DIP Loan are fair, reasonable, and adequate under the circumstances.  The interest rate remains the same as the previous loan.  The liens are rolling up the existing liens with a challenge period such that any defects in the existing liens are preserved in the DIP lien.  The Roll-up is delayed pending the final order.  The closing fee is paid at closing.  The loan is similar to other loans authorized as DIP Loans, and is better to the extent it does not seek a 100% Roll-up at an interim order.

41.     The proposed financing agreement was negotiated in good faith and at arm's length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the Debtors' estates and their creditors.  We negotiated at great length, and with much

contention, on the terms in the DIP order.  We were able to increase the size of the new money to $500,000, among other negotiated terms.  We also were able to strike extra fees that were to be charged and limited percentage fees to the new money advance.  All of these were serious and good faith negotiations.

42.    The proposed financing agreement adequately protects prepetition secured creditors because it offers a challenge period for those with claims that could be impacted to raise issues with alleged perfection.  The DIP Lender believes that the loan is fully secured by a perfected first lien and the UCC searches we had performed of the states affected by the Debtors seems to confirm this.

43.    The DIP Loan also consents to the use of Cash Collateral, which is a significant source of funds for the bankruptcy process.  Without the consensual use of cash collateral, the Debtor may not be able to provide an orderly process to maximize the return to creditors.  The consent to use cash collateral is integral to the DIP Loan and the budget that accompanies it.   To the extent accounts receivable have been sold without recourse, the accounts receivable are not property of the estates, and the purchasers of the accounts receivable may continue to exercise their rights postpetition with respect to such accounts receivable.

44.    The trustee is unable to obtain such credit without the DIP Loan.  There is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted, because we are not aware of any senior liens and any senior liens may challenge the priority of the DIP Lien in the challenge period.


**B.    CRO appointment**

45.    The HII Board of Directors wishes for me to continue on as CRO for all the Debtors through the bankruptcy process.  I am experienced in oil and gas bankruptcies and

McKool 1123062v5

served as a court-appointed trustee in several bankruptcy matters.  I have been involved with preparing the company for bankruptcy, obtaining the financing, and stabilizing the wind-down of operations.  The Lenders employees, and the independent board rely on me.  I am critical to the successful execution of this plan to maximize recoveries for the creditors and investors.

**C.      Motions to reject leases**

46.      The Debtors have a number of equipment leases.  The Debtors will not need the assets encumbered by the leases as the Debtors move forward with the proposed sale process.  The Debtors are ready, willing, and able to surrender the leased/collateralized assets.  In many cases, we already have returned the vehicle, equipment or other asset.  In other cases, the vehicle has been retained by former employees who refused directions to turn it over.

47.      If the Debtors do not reject these leases effective on the first day of the case the lessor may submit administrative expense payments that will adversely affect the pursuit of these bankruptcy cases.  By rejecting the leases, any vehicles in the possession of former employees will become the responsibility of the lessor to locate and repossess.  The Debtor does not benefit from the continued use of these vehicles or other assets.

48.      In an attempt to minimize expenses, these leases must be rejected effective at the start of the case.  Otherwise, the lessor may claim that the entire missing vehicle is an administrative expense.

**D.      Motion for order authorizing maintenance of bank accounts, continued use of existing business forms etc.**

49.      The Debtors maintain the following bank accounts, which in many instances contain cash and the proceeds of accounts sold under the Account Purchase Agreement.  By

McKool 1123062v5

listing these, the Debtors are not indicating that all funds in them are property of the estate:

| Company | Bank | Account Type | Account # |
|---|---|---|---|
| HII Technologies, Inc. | Chase Bank | Checking | 521382981 |
| Apache Energy Services, LLC dba AES Water Solutions | Chase Bank | Checking | 113039250 |
| Apache Energy Services, LLC dba AES Safety Services | Chase Bank | Checking | 171276880 |
| Aqua Handling of Texas LLC, dba AquaTex | Heartland Bank | Checking | 2100024260 |
| Hamilton Investment Group | Heartland | Checking | 2100024286 |
| Sage Power Solutions, Inc. | Chase Bank | Checking | 513773619 |
| HII Technologies, Inc. | Heartland | Checking | 2100023973 |
| Apache Energy Services, LLC dba AES Water Solutions | Heartland | Checking | 2100024211 |
| Apache Energy Services, LLC dba AES Safety Services | Heartland | Checking | 2100024229 |
| Sage Power Solutions, Inc. | Heartland | Checking | 2100024278 |

50.    The Debtors' cash management system is designed to permit the efficient collection and application of funds.  The Debtors seek permission to continue their existing cash management system, without opening new debtor-in-possession bank accounts (except to the extent that the Debtors elect to do so in the ordinary course of their businesses).  A list of the Debtors' current bank accounts is attached to the Bank Account Motion.  The Debtors also seek relief from any requirement that they open new sets of books and records.

51.    Permitting the Debtors to maintain their existing bank accounts and existing cash management system (or to make only such changes as are appropriate in the ordinary course of business) will prevent disruption of the Debtors' operations and will not prejudice any party in interest.  The Debtors' existing cash management accounts function smoothly and permit the

McKool 1123062v5

efficient collection of cash for the benefit of the Debtors and all parties in interest. Any requirement that the Debtors open new accounts would potentially result in confusion and delays and hinder the efficient use of the Debtors' resources.

52. The Debtors also seek a waiver of the requirement in the United States Trustee's "Operating Guidelines and Reporting Requirements for Chapter 11 Cases" (the "Trustee's Guidelines") that they open new sets of books and records as of the Petition Date. The Debtors submit that compliance with this requirement would create unnecessary administrative burdens. The Debtors have in place computerized record keeping systems and will be able to differentiate between pre-petition and post-petition transactions.

53. The relief requested in the Bank Account Motion is necessary to preserve business continuity and to lessen the likelihood of disruption to the Debtors' operations. Requiring the Debtors to implement: (a) new bank accounts; (b) a new cash management system; and (c) the use of new business forms, books and records would place an undue burden on the Debtors and their estates.

**E.    Joint administration**

54. Joint administration of these Chapter 11 cases for procedural purposes only pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure will reduce the costs of the case. Joint administration is proper due to the ownership structure of the Debtors. The Debtors share common ownership as HIIT wholly owns Hamilton, Sage, AquaTex and AES.

55. The Debtors intend to file with the Court numerous motions and applications, including the various motions and applications which have been filed on the first day of these bankruptcy cases. Entry of an order directing joint administration of these cases will eliminate unnecessary delay and expense of duplicative motions, applications and notices. Finally, this

Court will be relieved of the burden of entering duplicative orders and maintaining duplicative files by jointly administering the bankruptcy cases.

56.     The rights of the respective creditors of the Debtors will not be adversely affected by the proposed joint administration of these cases.  The relief sought is purely procedural and is in no way intended to affect substantive rights.

Further, affiant saith naught."

Loretta R. Cross

SUBSCRIBED AND SWORN TO BEFORE ME, on 18th day of September, 2015.

NOTARY PUBLIC, STATE OF TEXAS

NANCY J. JONES
Notary Public
STATE OF TEXAS
My Comm. Exp. Feb. 08, 2017

McKool 1123062v5

Exhibit A – 13 Week Cash Forecast

McKool 1123062v5

**HII Technologies, Inc.**
**Wind Down Budget - DRAFT**

| CASH RECEIPTS AND DISBURSEMENTS | On 11 | WEEK #1 9/21/2015 | WEEK #2 9/28/2015 | WEEK #3 10/5/2015 | WEEK #4 10/12/2015 | WEEK #5 10/19/2015 | AUC 10/19/2015 | WEEK #6 10/26/2015 | WEEK #7 11/2/2015 | WEEK #8 11/9/2015 | WEEK #9 11/16/2015 | DEC 11/16/2015 | WEEK #10 11/23/2015 | WEEK #11 11/30/2015 | WEEK #12 12/7/2015 | WEEK #13 12/14/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH, BEGINNING OF WEEK** | $ | 75,000 | 100,000 | 100,000 | 140,721 | 140,721 | 252,747 | 148,645 | 148,645 | 148,645 | 153,646 | 252,423 | 252,423 | 262,423 | 262,423 | 262,423 |
| **RECEIPTS** | | | | | | | | | | | | | | | | |
| Receivable Collections | | 75,000 | 120,000 | 100,000 | 140,721 | 140,721 | | 148,645 | 148,645 | 148,645 | 153,646 | | 262,423 | 262,423 | 262,423 | 262,423 |
| Proceeds from Liquidation | | | | | | | 120,000 | | | | | | | | | |
| Other Receipts | | | 3,000 | | | | | 3,000 | | | 5,000 | | | | | |
| **TOTAL RECEIPTS** | | 75,000 | 120,000 | 100,000 | 140,721 | 140,721 | 252,747 | 151,646 | 148,645 | 148,645 | 153,646 | 252,423 | 262,423 | 262,423 | 262,423 | 262,423 |
| **DISBURSEMENTS** | | | | | | | | | | | | | | | | |
| **DIRECT OPERATING DISBURSEMENTS** | | | | | | | | | | | | | | | | |
| Contract Labor | | | | | | | | | | | | | | | | |
| Equipment Purchases | | | | | | | | | | | | | | | | |
| Other Expenses | | | | | | | | | | | | | | | | |
| **TOTAL DIRECT OPERATING DISBURSEMENTS** | | | | | | | | | | | | | | | | |
| **G&A DISBURSEMENTS** | | | | | | | | | | | | | | | | |
| Software & IT | | 2,740 | | 500 | | | 2,740 | | | 500 | | | | | | |
| Office Expenses | | 9,658 | | | | | 8,798 | 860 | | | | | | | | |
| Payroll | | 16,145 | 8,136 | 8,136 | | | 8,136 | | 8,136 | | | 8,136 | | | | |
| Professional Fees - Collections & SEC Filings | | | | | | | 20,000 | | | | | 20,000 | | | | |
| Insurance | | 16,176 | | 24,357 | | | 1,176 | | 10,341 | | | | | | | |
| Contract Labor | | 7,250 | 7,250 | 7,250 | 7,250 | | 7,250 | 7,250 | 7,250 | 7,250 | | 7,250 | 3,750 | 3,750 | 3,750 | 3,750 |
| Miscellaneous | | 5,000 | 5,000 | 5,000 | 5,000 | | 5,000 | 5,000 | 5,000 | 5,000 | | 5,000 | | | | |
| **TOTAL G&A DISBURSEMENTS** | | 36,937 | 34,960 | 13,250 | 45,243 | 12,250 | 53,300 | 13,110 | | 33,228 | 13,250 | 26,969 | 23,750 | 3,750 | 3,750 | 3,750 |
| **RESTRUCTURING ADVISORS [a]** | | | | | | | | | | | | | | | | |
| Financial Advisor - 18R | | | | | | | 40,000 | | | | | 50,000 | | | | |
| Legal - McGuire Smith | | | | | | | 50,000 | | | | | 60,000 | | | | |
| Creditor Committee | | | | | | | TBD | | | | | TBD | | | | |
| **TOTAL RESTRUCTURING ADVISORS [a]** | | | | | | | 90,000 | | | | | 110,000 | | | | |
| **OTHER DISBURSEMENTS** | | | | | | | | | | | | | | | | |
| Equipment Relocation & Sale Costs [b] | | | | | | | | | | | | | | | | |
| Security (Cameras, etc.) | | 3,600 | | | | | 1,000 | | | | | | | | | |
| Financing Fee | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | 75,000 | | | | | | | | |
| Payables & Arrears (Critical Vendors) | | | | | | | | | | | | | | | | |
| Chapter 11 Filing Fees | | 6,000 | | | | | 10,000 | | | | | 7,500 | | | | |
| Funding the Liquidation Trust | | | | | | | | | | | | 500,000 | | | | |
| **TOTAL OTHER DISBURSEMENTS** | | 11,000 | 8,600 | 5,000 | 5,000 | 5,000 | 11,000 | 75,000 | | | | 500,000 | 7,500 | | | |
| **TOTAL DISBURSEMENTS** | | 48,937 | 42,560 | 17,250 | 50,243 | 17,250 | 154,300 | 88,110 | | 33,228 | 13,250 | 520,386 | 141,373 | 145,250 | 3,750 | 3,750 |
| **NET CASH FLOW (b)** | | 25,443 | 50,440 | 82,750 | 90,478 | 3,471 | (2,653) | 60,535 | | 33,228 | 127,427 | (267,964) | 121,173 | 254,679 | 258,673 | 258,673 |
| **CASH BEFORE BORROWING** | | 25,443 | 156,798 | 269,276 | 252,747 | 256,092 | 335,626 | 319,290 | | 319,299 | 460,409 | 290,139 | 202,677 | 261,150 | 461,150 | 461,150 |
| Interest Payments & Loan Fees | | (108,835) | | | | | (108,835) | | | | (12,500) | | (108,835) | | | |
| **Cash from Borrowing** | | | | | | | | | | | | | | | | |
| Term Loan 1 | | | 100,000 | | | | | | | | | | | | | |
| Debtor in Possession Financing | | 100,000 | | | | | | | | | | | | | | |
| Total Cash from Borrowing | | 100,000 | 100,000 | | | | | | | | | | | | | |
| **Loan Repayments** | | | | | | | | | | | | | | | | |
| Hope Well Purchase Agreement | | | | | | | | | | | | | | | | |
| Term Loan 1 | | | | | | | | | | | | | | | | |
| Term Loan 2 | | | | | | | | | | | | | | | | |
| Debtor in Possession Financing | | | | | | | | | | | | | | | | |
| Total Loan Repayments | | | | | | | | | | | | | | | | |
| **Net Cash from Borrowing** | | 100,000 | (108,835) | | | | (108,835) | | | | (12,500) | | (108,835) | | | |
| **CASH, END OF WEEK** | $ | 125,443 | 75,946 | 154,798 | 269,276 | 252,747 | 256,092 | 202,792 | | 319,299 | 448,209 | 390,139 | 202,677 | 461,150 | 461,150 | 738,823 |

**Footnotes**

[a] Restructuring Advisor and Creditor Committee fees are estimates that are subject to change based upon the Chapter 11 proceedings

[b] Estimated marketing fees for the sale of assets is expected to be 15%, which is not shown because sale proceeds are TBD at this time.

File: Copy of Wind Down Use of cash updated 9-18-15
Tab: Forecast

DRAFT CONFIDENTIAL
Page 1 of 1
EXHIBIT A

# BusinessManager Aged Receivables by Invoice Date

**As of 9/16/2015**

**HII Technologies, Inc.**

| | | |
|---|---|---|
| Customer Name: | OCCIDENTAL OIL AND GAS | |
| Customer Code: | OCCIDENTAL OIL AND GAS | |
| Phone: | 972-404-3800 | |

| | | | | |
|---|---|---|---|---|
| Credit Limit: | $.00 | Last Payment Date: | 9/2/2015 | Total AR Balance / %: $1,163,723.53 / 31.95% |
| Insurance Limit: | $.00 | Last Payment Amount: | $55,550.00 | Funded Balance / %: $609,421.81 / 68.42% |
| Default Pymt. Term: | Net 30 I | | | Unapplied Credits: $0.00 |

| Doc Nbr | Trans Date | Type | Description | Original Inv. Amount | 0-60 | 61-90 | 91-120 | Over 120 | Age |
|---|---|---|---|---|---|---|---|---|---|
| 6561 | 4/26/2015 | Invoice | | $9,850.75 | | | | $750.75 | 143 |
| 6575 | 4/26/2015 | Invoice | | $7,956.38 | | | | $606.38 | 143 |
| 6583 | 4/26/2015 | Invoice | | $18,077.75 | | | | $1,377.75 | 143 |
| 6599 | 4/26/2015 | Invoice | | $13,260.63 | | | | $1,010.63 | 143 |
| 6603 | 4/26/2015 | Invoice | | $17,428.25 | | | | $1,328.25 | 143 |
| 6608 | 4/25/2015 | Invoice | | $11,366.25 | | | | $866.25 | 144 |
| 6611 | 4/26/2015 | Invoice | | $13,260.63 | | | | $1,010.63 | 143 |
| 6614 | 4/26/2015 | Invoice | | $10,608.50 | | | | $808.50 | 143 |
| 6617 | 4/26/2015 | Invoice | | $9,282.44 | | | | $707.44 | 143 |
| 6621 | 4/26/2015 | Invoice | | $11,366.25 | | | | $866.25 | 143 |
| 6640 | 4/30/2015 | Invoice | | $7,577.50 | | | | $577.50 | 139 |
| 6641 | 4/30/2015 | Invoice | | $8,822.38 | | | | $672.38 | 139 |
| 6642 | 4/30/2015 | Invoice | | $2,381.50 | | | | $181.50 | 139 |
| 6643 | 4/27/2015 | Invoice | | $4,925.38 | | | | $375.38 | 142 |
| 6644 | 4/29/2015 | Invoice | | $5,683.13 | | | | $433.13 | 140 |
| 6645 | 4/30/2015 | Invoice | | $9,959.00 | | | | $759.00 | 139 |
| 6646 | 4/30/2015 | Invoice | | $14,180.75 | | | | $1,080.75 | 139 |
| 6648 | 4/28/2015 | Invoice | | $3,768.75 | | | | $288.75 | 141 |
| 6649 | 4/28/2015 | Invoice | | $3,031.00 | | | | $231.00 | 141 |
| 6650 | 4/28/2015 | Invoice | | $2,652.13 | | | | $202.13 | 141 |
| 6651 | 4/27/2015 | Invoice | | $7,577.50 | | | | $577.50 | 142 |
| 6652 | 4/25/2015 | Invoice | | $15,243.13 | | | | $743.13 | 144 |
| 6653 | 4/25/2015 | Invoice | | $15,243.13 | | | | $743.13 | 144 |
| 6654 | 4/30/2015 | Invoice | | $7,266.24 | | | | $7,266.24 | 139 |

EXHIBIT 1

tabbies

# BusinessManager Aged Receivables by Invoice Date - HII Technologies, Inc.

As of: 9/16/2015

| | | | |
|---|---|---|---|
| Customer Name: | OCCIDENTAL OIL AND GAS | Credit Limit: | $.00 |
| Customer Code: | OCCIDENTAL OIL AND GAS | Insurance Limit: | $.00 |
| Phone: | 972-404-3800 | Default Pymt. Term: | Net 30 I |

| | |
|---|---|
| Last Payment Date: | 9/2/2015 |
| Last Payment Amount: | $55,550.00 |

| | |
|---|---|
| Total AR Balance / %: | $1,163,723.53 / 31.95% |
| Funded Balance / %: | $809,421.81 / 68.42% |
| Unapplied Credits: | $0.00 |

| Doc. Nbr | Trans Date | Type | Description | Original Inv. Amount | 0-60 | 61-90 | 91-120 | Over 120 | Age |
|---|---|---|---|---|---|---|---|---|---|
| 6658 | 4/26/2015 | Invoice | | $21,023.95 | | | | $1,024.95 | 143 |
| 6659 | 4/30/2015 | Invoice | | $12,013.69 | | | | $565.69 | 139 |
| 6660 | 4/26/2015 | Invoice | | $21,134.33 | | | | $1,030.33 | 143 |
| 6661 | 4/30/2015 | Invoice | | $12,076.76 | | | | $588.76 | 139 |
| 6663 | 5/3/2015 | Invoice | | $7,469.25 | | | | $569.25 | 136 |
| 6664 | 5/10/2015 | Invoice | | $17,428.25 | | | | $1,328.25 | 129 |
| 6665 | 5/5/2015 | Invoice | | $2,165.00 | | | | $165.00 | 134 |
| 6666 | 5/5/2015 | Invoice | | $2,976.88 | | | | $226.88 | 134 |
| 6667 | 5/5/2015 | Invoice | | $13,260.63 | | | | $1,010.63 | 134 |
| 6668 | 5/3/2015 | Invoice | | $11,203.88 | | | | $853.88 | 136 |
| 6669 | 5/10/2015 | Invoice | | $26,142.38 | | | | $1,992.38 | 129 |
| 6670 | 5/3/2015 | Invoice | | $5,683.13 | | | | $433.13 | 136 |
| 6671 | 5/10/2015 | Invoice | | $9,471.88 | | | | $721.88 | 129 |
| 6677 | 5/10/2015 | Invoice | | $18,396.88 | | | | $5,391.39 | 129 |
| 6678 | 5/10/2015 | Invoice | | $7,577.50 | | | | $577.50 | 129 |
| 6679 | 5/17/2015 | Invoice | | $18,396.88 | | | | $18,396.88 | 122 |
| 6684 | 5/17/2015 | Invoice | | $12,250.00 | | | $12,250.00 | | 122 |
| 6685 | 5/24/2015 | Invoice | | $12,250.00 | | | $12,250.00 | | 115 |
| 6686 | 5/17/2015 | Invoice | | $21,350.00 | | | | $21,350.00 | 122 |
| 6687 | 5/24/2015 | Invoice | | $21,350.00 | | | $21,350.00 | | 115 |
| 6688 | 5/31/2015 | Invoice | | $21,350.00 | | | $21,350.00 | | 108 |
| 6689 | 5/31/2015 | Invoice | | $12,250.00 | | | $12,250.00 | | 108 |
| 6690 | 5/22/2015 | Invoice | | $21,510.68 | | $21,510.68 | | | 117 |
| 6691 | 5/17/2015 | Invoice | | $12,250.00 | | | | $12,250.00 | 122 |
| 6692 | 5/17/2015 | Invoice | | $1,750.00 | | | | $1,750.00 | 122 |
| 6693 | 5/17/2015 | Invoice | | $16,100.00 | | | | $16,100.00 | 122 |

*BusinessManager Aged Receivables by Invoice Date - HII Technologies, Inc.*

As of: 9/16/2015

| Customer Name: | OCCIDENTAL OIL AND GAS | | Credit Limit: | $.00 | Last Payment Date: | 9/2/2015 | Total AR Balance / %: | $1,163,723.53 / 31.95% |
| Customer Code: | OCCIDENTAL OIL AND GAS | | Insurance Limit: | $.00 | Last Payment Amount: | $55,550.00 | Funded Balance / %: | $609,421.81 / 68.42% |
| Phone: | 972-404-3800 | | Default Pymt. Term: | Net 301 | | | Unapplied Credits: | $0.00 |

| Doc Nbr | Trans Date | Type | Description | Original Inv. Amount | 0-60 | 61-90 | 91-120 | Over 120 | Age |
|---|---|---|---|---|---|---|---|---|---|
| 6694 | 5/17/2015 | Invoice | | $21,250.00 | | | | $21,250.00 | 122 |
| 6695 | 5/24/2015 | Invoice | | $21,350.00 | | | $21,350.00 | | 115 |
| 6696 | 5/31/2015 | Invoice | | $21,350.00 | | | $21,350.00 | | 108 |
| 6697 | 5/15/2015 | Invoice | | $8,750.00 | | | | $8,750.00 | 124 |
| 6698 | 5/22/2015 | Invoice | | $10,500.00 | | | $10,500.00 | | 117 |
| 6699 | 5/24/2015 | Invoice | | $26,250.00 | | | $26,250.00 | | 115 |
| 6700 | 5/28/2015 | Invoice | | $21,000.00 | | | $21,000.00 | | 111 |
| 6701 | 5/17/2015 | Invoice | | $5,750.00 | | | | $5,750.00 | 122 |
| 6702 | 5/17/2015 | Invoice | | $5,750.00 | | | | $5,750.00 | 122 |
| 6703 | 5/24/2015 | Invoice | | $17,850.00 | | | $17,850.00 | | 115 |
| 6704 | 5/31/2015 | Invoice | | $21,350.00 | | | $21,350.00 | | 108 |
| 6705 | 5/31/2015 | Invoice | | $18,900.00 | | | $18,900.00 | | 108 |
| 6706 | 5/24/2015 | Invoice | | $16,100.00 | | | $16,100.00 | | 115 |
| 6711 | 5/31/2015 | Invoice | | $19,700.00 | | | $19,700.00 | | 108 |
| 6745 | 6/7/2015 | Invoice | | $21,350.00 | | | $21,350.00 | | 101 |
| 6746 | 6/14/2015 | Invoice | | $21,350.00 | | | $21,350.00 | | 94 |
| 6747 | 6/21/2015 | Invoice | | $16,100.00 | | $16,100.00 | | | 87 |
| 6748 | 6/7/2015 | Invoice | | $12,250.00 | | | $12,250.00 | | 101 |
| 6749 | 6/14/2015 | Invoice | | $9,625.00 | | | $9,625.00 | | 94 |
| 6750 | 6/21/2015 | Invoice | | $6,125.00 | | $6,125.00 | | | 87 |
| 6751 | 6/7/2015 | Invoice | | $21,350.00 | | | $21,350.00 | | 101 |
| 6752 | 6/14/2015 | Invoice | | $16,650.00 | | | $16,650.00 | | 94 |
| 6753 | 6/16/2015 | Invoice | | $3,500.00 | | | $3,500.00 | | 92 |
| 6754 | 6/7/2015 | Invoice | | $21,350.00 | | | $21,350.00 | | 101 |
| 6755 | 6/12/2015 | Invoice | | $13,150.00 | | | $13,150.00 | | 96 |
| **Customer Totals:** | | | | $388,271.30 | $0.00 | $22,225.00 | $423,635.68 | $163,561.13 | $0.00 |

BusinessManager Aged Receivables by Invoice Date - HII Technologies, Inc.

As of: 9/16/2015

| Customer Name: | PIONEER NATURAL | | Credit Limit: | $200,000.00 | Last Payment Date: | 6/19/2015 | Total AR Balance / %: | $476,580.04 / 13.09% |
| Customer Code: | PIONEER NATURAL | | Insurance Limit: | $.00 | Last Payment Amount: | $67,026.00 | Funded Balance / %: | $25,650.00 / 2.90% |
| Phone: | 972-969-5604 | | Default Pymt. Term: | Net 301 | | | Unapplied Credits: | $0.00 |

| Doc Nbr | Trans Date | Type | Description | Original Inv. Amount | 0-60 | 61-90 | 91-120 | Over 120 | Age |
|---|---|---|---|---|---|---|---|---|---|
| 300560 | 3/11/2015 | Invoice | | $9,400.00 | | | | $9,400.00 | 189 |
| 300610 | 5/31/2015 | Invoice | | $16,450.00 | | | $16,450.00 | | 108 |
| Customer Totals: | | | | $25,850.00 | $0.00 | $0.00 | $16,450.00 | $9,400.00 | |

| Customer Name: | SANCHEZ OIL & GAS | | Credit Limit: | $200,000.00 | Last Payment Date: | 8/31/2015 | Total AR Balance / %: | $292,144.99 / 8.02% |
| Customer Code: | SANCHEZ OIL & GAS | | Insurance Limit: | $.00 | Last Payment Amount: | $3,556.01 | Funded Balance / %: | $255,408.90 / 28.68% |
| Phone: | 713-783-8000 x3121 | | Default Pymt. Term: | Net 151 | | | Unapplied Credits: | $0.00 |

| Doc Nbr | Trans Date | Type | Description | Original Inv. Amount | 0-60 | 61-90 | 91-120 | Over 120 | Age |
|---|---|---|---|---|---|---|---|---|---|
| 1120 | 3/31/2015 | Invoice | | $13,946.39 | | | | $13,946.39 | 169 |
| 1138B | 4/29/2015 | Invoice | | $920.13 | | | | $920.13 | 140 |
| 1140 | 4/29/2015 | Invoice | | $5,060.69 | | | | $5,060.69 | 140 |
| 1141 | 4/29/2015 | Invoice | | $3,680.50 | | | | $3,680.50 | 140 |
| 1142 | 4/29/2015 | Invoice | | $1,380.19 | | | | $1,380.19 | 140 |
| 1143 | 4/29/2015 | Invoice | | $2,300.31 | | | | $2,300.31 | 140 |
| 1144 | 4/29/2015 | Invoice | | $2,300.31 | | | | $2,300.31 | 140 |
| 1145 | 4/30/2015 | Invoice | | $13,206.50 | | | | $13,206.50 | 139 |
| 1146 | 4/30/2015 | Invoice | | $4,546.50 | | | | $4,546.50 | 139 |
| 1147 | 4/30/2015 | Invoice | | $9,904.88 | | | | $9,904.88 | 139 |
| 1148 | 4/30/2015 | Invoice | | $13,206.50 | | | | $13,206.50 | 139 |
| 1149 | 4/30/2015 | Invoice | | $13,206.50 | | | | $13,206.50 | 139 |
| 1150 | 4/30/2015 | Invoice | | $13,206.50 | | | | $13,206.50 | 139 |
| 1151 | 4/30/2015 | Invoice | | $4,546.50 | | | | $4,546.50 | 139 |
| 1163 | 5/31/2015 | Invoice | | $10,178.21 | | | $10,178.21 | | 108 |
| 1187 | 5/31/2015 | Invoice | | $2,857.80 | | | $2,857.80 | | 108 |
| 1191 | 5/31/2015 | Invoice | | $9,904.88 | | | $9,904.88 | | 105 |

# BusinessManager Aged Receivables by Invoice Date - Hll Technologies, Inc.

As of: 9/16/2015

**Customer Name:** SANCHEZ OIL & GAS
**Customer Code:** SANCHEZ OIL & GAS
**Phone:** 713-783-8000 x3121

| | | | |
|---|---|---|---|
| Credit Limit: | $200,000.00 | Last Payment Date: | 8/31/2015 | Total AR Balance / %: | $292,144.99 / 8.62% |
| Insurance Limit: | $.00 | Last Payment Amount: | $3,556.01 | Funded Balance / %: | $255,408.90 / 28.68% |
| Default Pymt. Term: | Net 15 | | | Unapplied Credits: | 50.00 |

| Doc Nbr | Trans Date | Type | Description | Original Inv. Amount | 0-60 | 61-90 | 91-120 | Over 120 | Age |
|---|---|---|---|---|---|---|---|---|---|
| 1192 | 5/31/2015 | Invoice | | $13,206.50 | | | $13,206.50 | | 108 |
| 1193 | 5/31/2015 | Invoice | | $13,206.50 | | | $13,206.50 | | 108 |
| 1194 | 5/31/2015 | Invoice | | $13,206.50 | | | $13,206.50 | | 108 |
| 1195 | 5/31/2015 | Invoice | | $13,206.50 | | | $13,206.50 | | 108 |
| 1196 | 5/31/2015 | Invoice | | $5,536.99 | | | $5,536.99 | | 108 |
| 1197 | 5/31/2015 | Invoice | | $2,349.03 | | | $2,349.03 | | 106 |
| 1198 | 5/31/2015 | Invoice | | $2,349.03 | | | $2,349.03 | | 108 |
| 1199 | 5/31/2015 | Invoice | | $3,187.96 | | | $3,187.96 | | 108 |
| 1200 | 5/31/2015 | Invoice | | $5,369.20 | | | $5,369.20 | | 108 |
| 1201 | 5/31/2015 | Invoice | | $1,510.09 | | | $1,510.09 | | 108 |
| 1213 | 5/31/2015 | Invoice | | $10,013.13 | | | $10,013.13 | | 108 |
| 1214 | 6/5/2015 | Invoice | | $16,061.59 | | | $16,061.59 | | 103 |
| 1215 | 5/31/2015 | Invoice | | $3,020.18 | | | $3,020.18 | | 108 |
| 1216 | 5/31/2015 | Invoice | | $4,530.26 | | | $4,530.26 | | 108 |
| 1217 | 5/31/2015 | Invoice | | $2,516.81 | | | $2,516.81 | | 108 |
| 1218 | 5/31/2015 | Invoice | | $1,510.09 | | | $1,510.09 | | 108 |
| 1219 | 5/31/2015 | Invoice | | $2,240.78 | | | $2,240.78 | | 108 |
| 1220 | 5/31/2015 | Invoice | | $1,510.09 | | | $1,510.09 | | 108 |
| 1221 | 5/31/2015 | Invoice | | $4,530.26 | | | $4,530.26 | | 108 |
| 1222 | 5/31/2015 | Invoice | | $1,510.09 | | | $1,510.09 | | 108 |
| 1223 | 5/31/2015 | Invoice | | $3,020.18 | | | $3,020.18 | | 108 |
| 1224 | 5/31/2015 | Invoice | | $3,020.18 | | | $3,020.18 | | 106 |
| 1225 | 5/31/2015 | Invoice | | $676.56 | | | $676.56 | | 106 |
| 1226 | 5/31/2015 | Invoice | | $519.60 | | | $519.60 | | 108 |
| 1227 | 5/31/2015 | Invoice | | $681.98 | | | $681.98 | | 106 |
| 1228 | 5/31/2015 | Invoice | | $519.60 | | | $519.60 | | 108 |

*BusinessManager Aged Receivables by Invoice Date - Hill Technologies, Inc.*

As of: 9/16/2015

| Customer Name: | SANCHEZ OIL & GAS | Credit Limit: | $200,000.00 | Last Payment Date: | 8/31/2015 | Total A/R Balance / %: | $292,144.99 / 8.02% |
| Customer Code: | SANCHEZ OIL & GAS | Insurance Limit: | $.00 | Last Payment Amount: | $3,556.01 | Funded Balance / %: | $255,408.90 / 28.68% |
| Phone: | 713-783-8000 x3121 | Default Pymt. Term: | Net 15 I | | | Unapplied Credits: | $0.00 |

| Doc. Nbr | Trans Date | Type | Description | Original Inv. Amount | 0-60 | 61-90 | 91-120 | Over 120 | Age |
|---|---|---|---|---|---|---|---|---|---|
| 1229 | 5/21/2015 | Invoice | | $2,045.93 | | | $2,045.93 | | 118 |
| | | | **Customer Totals:** | $255,408.90 | $0.00 | $0.00 | $153,996.50 | $101,412.40 | $0.00 |

**Business Totals:**

| | |
|---|---|
| Total A/R Balance: | $3,641,973.61 |
| Total Funded Balance: | $890,680.71 |

**Report Totals:**

| | |
|---|---|
| Total Customers Printed: | 3 |
| Unapplied Credits: | $0.00 |
| Aged 0-60 | $0.00 |
| Aged 61-90 | $22,225.00 |
| Aged 91-120 | $594,082.18 |
| Aged Over 120 | $274,373.53 |
| Aged | $0.00 |

**Report Period**

| | |
|---|---|
| Run report as of: | 9/16/2015 |

**Report Filter Options**

| | |
|---|---|
| Customer type: | Not Selected |
| Customer status: | Not Selected |
| Exclude customers with A/R balances: | Not Selected |
| Include only customers over credit limit: | No |

**Transaction Filter Options**

| | |
|---|---|
| Transaction type: | Invoices |

*BusinessManager Aged Receivables by Invoice Date - HII Technologies, Inc.*

*As of: 9/16/2015*

Transaction status: Funded

**Aging Options**

Type: Invoice Date

**Sort Options**

| Primary Sort: | Customer Name | Order: | Ascending |
|---|---|---|---|
| Secondary Sort: | Document Number | Order: | Ascending |