**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **HII TECHNOLOGIES, INC.,** *et al.*[1] | § | **15-60070 (DRJ)** |
| **Debtors** | § | **(Jointly Administered)** |

**EXPEDITED MOTION TO EMPLOY AUCTIONEERS
AND HOLD AUCTION UNDER 11 U.S.C.§ 327, 328 and 363**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EXPEDITED RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED; YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

**A HEARING HAS BEEN REQUESTED FOR OCTOBER 5, 2015 BEFORE THE COURT AT 515 RUSK, COURTROOM 400, HOUSTON TX, 77002 AT 2:30 P.M. CENTRAL TIME.**

**To the Honorable David R. Jones, United State Bankruptcy Judge:**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: (i) Apache Energy Services, LLC (4404); (ii) Aqua Handling of Texas, LLC (4480); (iii) HII Technologies, Inc. (3686); (iv) Sage Power Solutions, Inc. fka KMHVC, Inc. (1210); and (v) Hamilton Investment Group, Inc. (0150).

McKool 1125325v8

HII Technologies, Inc. ("HII") and its subsidiaries, as debtors and debtors in possession in these chapter 11 cases (collectively, the "Debtors"), seek entry of an order, pursuant to Bankruptcy Code section 327(a) and 328(a), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtors' to engage Hilco Industrial, LLC ("Hilco") as auctioneer for certain assets of the Debtors and (ii) authorizing the auction of those assets.

## BACKGROUND

1.      On September 18, 2015, the Debtors each filed voluntary petitions under chapter 11 of title 11, United States Code.  The Debtors' cases are jointly administered.

2.      The Debtors have assets used in frac water management, safety services and portable power used by exploration and production companies in the United States. Additional background information on the Debtors may be found in the first day affidavit.

## JURISDICTION

3.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b).  The Court has authority to enter final orders in this case.

## RELIEF REQUESTED

4.      The Debtors seek to engage Hilco to market and sell assets at auction under the Asset Marketing Agreement (the "AMA", attached hereto as **Exhibit C**).  Hilco will expend an estimated $40,000 on marketing the assets and promoting their auction.  Thereafter, the Debtors request authority for Hilco to auction the assets.

McKool 1125325v8

## BASIS FOR EXPEDITED RELIEF

5.      Expedited relief is justified.  The Debtors believe that the value of its equipment and intellectual property will be maximized via a sale by auction to be held within sixty days following the petition date.  Immediate engagement of Hilco is necessary to begin the audit process and timely complete the sale.  In addition, Debtors were locked out of several yards immediately prior to bankruptcy and did not have a complete accounting of its equipment as of the petition date.  Debtors are engaging Hilco to inventory and account for the equipment held at various yards, in addition to conducting the auction and acting as auctioneer.  These additional tasks increase the time necessary to successfully complete the auction. In order to maximize the assets' value and meet the sixty-day deadline, it is important that Hilco be retained and begin work as quickly as possible.

## FACTS SPECIFIC TO THE RELIEF REQUESTED

**The Auction**

6.      In connection with the chapter 11 cases, the Debtors are pursuing a sale of designated assets.  The auction to be conducted by Hilco will consist primarily of the Debtors' equipment.  (Subsequently, the Debtors will attempt to sell the public company form and certain remaining non-equipment assets such as contract rights).

7.      In May and June, the Debtors inventoried the Hamilton yards in Guthrie and Colgate, Oklahoma, where the largest collection of equipment remains.  Hilco and the Debtors visited the yards in July and equipment was missing.  Some missing equipment was subsequently located, some was not.  The yard is under the control of the Hamilton family, former insiders of the Debtor.

3

McKool 1125325v8

8.     The Debtors have equipment at other yards in Tuleta, Goliad, and Midland, Texas.  Landlords at some of those yards had prevented inspection of the property in the days preceding the bankruptcy.  Now that the Debtors have access, Hilco will be able to review the equipment at each location.

9.     Until Hilco and the Debtors finalize their list of assets, a complete list of the Debtors' auctioned assets cannot be provided.  In the meantime, a list of the equipment that the Debtors believe they can account for and propose to have Hilco auction, is attached as **Exhibit A**.  As additional assets are returned to the Debtors, and after Hilco is engaged and can visit the yards the Debtors have been prevented from accessing and account for the equipment, the Debtors will amend Exhibit A to include additional assets to be auctioned by Hilco.

10.     As part of the auction process, Hilco will access the remaining yards and account for the Debtors' remaining equipment.

**Auction Proposed**

11.     The Debtors propose to sell the assets via a live auction to be held at the location containing the largest amount of the Debtors' equipment in Guthrie, Oklahoma, which will be simultaneously broadcast online for participation by remote bidders.  The auction will be broadly advertised, and bidding will be open to the public.  Hilco may choose to offer the assets for sale by piece or by lot.  Under the AMA, the Debtors and Hilco also reserve the right to sell the assets pursuant to other sale strategies as Hilco and the Debtors mutually agree.

12.     To maximize recoveries for the Debtors' estates, the Debtors propose that the assets be sold at the auction free and clear of all liens, claims and encumbrances, with any liens attaching to the proceeds of the assets, and without the need for further Court approval.  The Debtors believe further Court approval of the sale should not be required.  If the auctioneer

requires Court approval, that requirement would chill bidding for the assets, as bidders normally expect to take ownership of purchased assets at the auction.

**<u>Hilco's Qualifications</u>**

13.     Hilco is in the business of marketing and selling assets on behalf of its clients. Hilco is a leading international industrial auctioneer and liquidator specializing in valuing and converting idle capital equipment into cash through a multitude of creative sales methodologies and disposition channels including auction, liquidation, private treaty and sealed bid sales.

14.     The Debtors seek to retain Hilco because of its extensive experience and international reputation in industrial auctions, liquidations, and other industrial capital asset disposition services.  Its expertise spans countless industries, from automotive manufacturing plants, to woodworking shops; from high capacity power generation equipment, to plastic manufacturing machinery; from construction equipment to high-tech electronics manufacturing.

15.     Hilco specializes in assisting and advising debtors, creditors, creditor's committees, shareholders, bondholders and other parties involved with financially distressed companies, both during and outside of bankruptcy cases, and has served as financial and strategic advisors for debtors, creditors, and other constituents in numerous chapter 11 cases in this District and others.  *See, e.g., Highway Technologies, Inc.,* Case No. 12-11326 (KJC) (Bankr. D. Del. June 27, 2013); *In re Hostess Brands, Inc.,* Case. No. 12-22052 (RDD) (Bankr. S.D.N.Y. Dec. 21, 2012)*; In re FormTech Industries, LLC*, Case No. 09-12964 (MFW) (Bankr. D. Del. Jan. 5, 2010); *In re Autoseis, Inc., et al.*, Case No. 14-21130 (RSS) (Bankr. S.D. Tex. Mar. 25, 2014).

**<u>Services to be Provided</u>**

16.     Pursuant to the AMA, Hilco has agreed to provide the following services:

McKool 1125325v8

(i)       develop an advertising and marketing plan for the sale of the Assets;

(ii)      implement the advertising and marketing plan as deemed necessary or appropriate by Hilco to maximize the net recovery on the Assets;

(iii)    prepare for the sale of the Assets, including gathering specifications and photographs for pictorial brochures and arranging the Assets in a manner, which in Hilco's judgment would be designed to enhance the net recovery on the Assets;

(iv)    provide fully qualified and experienced personnel who will prepare for and sell the Assets in accordance with the terms of this Agreement;

(v)     provide a complete auction crew to handle computerized accounting functions necessary to provide auction buyers with invoices and the Company with a complete accounting of all Assets sold at the auction

(vi)    oversee the removal of Assets by buyers from the Locations;

(vii)   sell the Assets for cash or other immediately available funds to the highest bidder(s) on an "AS IS," "WHERE IS" and "all sales are final" basis and in accordance with the terms of this Agreement;

(viii)  charge and collect on behalf of Company from all purchasers any purchase price together with all applicable taxes in connection therewith;

(ix)    deposit all collected Gross Proceeds into a separate account maintained by Hilco and remit such proceeds to the Company by transferring them to the account described on Exhibit B attached hereto and by this reference incorporated herein, (the "Client Account"), (less any amounts due to Hilco hereunder) within thirty (30) days after the sale of each Asset. "Gross Proceeds" shall be defined as cumulative collected gross receipts from the sale of the Assets, exclusive of sales taxes and buyer's premiums; and

(x)     submit an initial sales report to the Company within fourteen (14) days after the sale of the Assets and a final complete sales report to the Company within fourteen days after the end of the Term.

**Professional Compensation**

17.    Hilco will be compensated in accordance with the fee structure (the "Fee Structure") set forth in the AMA. Under the Fee Structure, Hilco will be entitled to charge and retain for its own account an industry-standard buyer's premium of 18% for any of the assets

that are sold (the "Buyer's Premium").  The Buyer's Premium is a fee charged in addition to the sale price and is paid by the buyer.

18.     Hilco will be responsible for any out-of-pocket expenses related to advertising, promotion and sales costs, lodging, travel, and labor associated with project management (the "Hilco Expenses").

19.     Hilco shall advance and shall be entitled to reimbursement for out-of-pocket expenses related to anything other than the Hilco Expenses—including, but not limited to asset marshaling, asset repair, or asset refurbishment regardless whether or not any assets are sold (the "Company Expenses").

20.     In light of the Fee Structure and general industry practice for auction firms such as Hilco, the Debtors, along with Hilco, request that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders of this Court or any guidelines regarding submission and approval of fee applications, Hilco and its professionals shall not be required to file fee applications or keep time records.

21.     The overall compensation structure described above is comparable to compensation generally charged by asset liquidators of similar stature to Hilco for comparable engagements, both in and out of court.  Hilco's liquidation expertise was an important factor in Hilco's determination of the amount of its fees, and the Debtors believe that the ultimate benefit to the Debtors of Hilco's services hereunder cannot be measured merely by reference to the number of hours to be expended by Hilco's professionals in the performance of services. Moreover, the Debtors believe that the compensation arrangement contained in the AMA is beneficial to the Debtors' estates as it provides proper inducement for Hilco to act expeditiously and prudently with respect to the matters for which it will be employed.

McKool 1125325v8

**Indemnification of Hilco**

22.     The Debtors have agreed to indemnify and hold Hilco, its affiliates, members, directors, and agents under certain circumstances specified in the AMA, provided that the Debtors will have no obligation to indemnify Hilco, or provide contribution or reimbursement to Hilco, for any claim or expense that is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from Hilco's gross negligence, willful misconduct, or fraud; (ii) incurred by Hilco as a direct result of a contractual dispute in which the Debtors allege the material breach of Hilco's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court (the determination having become final and no longer subject to appeal), after notice and a hearing, to be a claim or expense for which Hilco should not receive indemnity, contribution, or reimbursement under (i) or (ii).

**Disinterestedness of Hilco**

23.     To the best of the Debtors' knowledge, (i) Hilco is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as required by Bankruptcy Code section 327(a), and does not hold or represent an interest adverse to the Debtors' estates, and (ii) Hilco has no connection to the Debtors, their creditors, or any parties in interest, except as may be disclosed in the Declaration of Jody Bacque, Senior Vice President of Hilco Industrial, LLC ("Bacque Declaration," attached hereto as **Exhibit D**).  Hilco has fully informed the Debtors of its ongoing representations of entities that may have a connection to the Debtors as described in

McKool 1125325v8

the Bacque Declaration, and the Debtors have consented to Hilco's continuing to represent such entities in matters unrelated to these proceedings.

24.    As required by Fed. R. Bankr. P. 6005 ("Rule 6005") Hilco is not an officer or employee of the Judicial Branch.  Hilco's buyers' premium and reimbursement rights will be set forth in the order approving auctioneer.  As required by Fed. R. Bankr. P. 6004(f), Hilco will file a statement of assets sold upon completion of the auction and transmit a copy to the United States trustee and furnish a copy to the debtor-in-possession.

## LEGAL BASIS FOR RELIEF REQUESTED

### Rule 6005 and 11 U.S.C. §§ 327 and 328 Authorizes Auctioneers Under a Fixed Percentage

25.    Pursuant to Sections 327, 328 and Rule 6005, a debtor in possession may employ an auctioneer, but that auctioneer must have their payment terms set forth in the order appointing them.  Hilco does not hold or represent an interest adverse to the estate and is a disinterested person.

26.    Specifically, Bankruptcy Code section 327(a) provides that a debtor in possession, subject to court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).   Section 328(a) of the Bankruptcy Code provides that a debtor in possession, with the court's approval:

> may employ or authorize employment of a professional person under Section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to

9

have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).  Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

FED. R. BANKR. P. 2014.

## The Auction Should be Approved

27.     Bankruptcy Code section 363(b) authorizes a debtor to use or sell assets of the estate other than in the ordinary course of business.  *See* 11 U.S.C. § 363(b)(1).  Although Bankruptcy Code section 363 does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts in this district and elsewhere have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction.  *See In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbotts Dairies of Penn.*, Inc., 788 F.2d 143 (3d Cir. 1986); *In re Lionel Com.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Dura Auto. Sys.*, 2007 Bankr. LEXIS 2764 (Bankr. D. Del. Aug. 15, 2007).

28.     Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (i) the debtor in possession has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith.  *See Delaware & Hudson Railway*, 124 B.R. at 166; *In re Decora Indus., Inc.*, 2002 WL 32332749, *2 (Bankr. D. Del. May 20, 2002).

McKool 1125325v8

29.     Sales under section 363(b) of the Bankruptcy Code may be by public auction. *See* FED. R. BANKR. P. 6004(f)(1); *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 498 (3d Cir. 1998) (noting that assets were sold pursuant to section 363 by public auction); *Invankovich v. Canney (In re Summit Ventures, Inc.)*, 161 B.R. 9, 11 (D. Vt. 1993) (affirming order approving sale of assets by public auction where bankruptcy court found auction process was fair and successful bidder was a purchaser in good faith); *see also In re Condere Coro.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998) (approving private sale of a chapter 11 debtor's assets where the standards of section 363(b) were met); *In re Embrace Systems Coro.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) (holding that private sale of a chapter 11 debtor's assets is appropriate if all provisions of section 363 are followed, the bid is fair and the sale is in the best interests of the estate and its creditors).

30.     Ample business justification exists in this case to approve the proposed sale of the assets and any transactions effectuated in accordance therewith.  The assets are no longer necessary for the Debtors' businesses.  The Debtors have considered all alternatives, with the assistance of their advisors, and determined that the sale of equipment by Hilco pursuant to an auction will preserve and maximize the value of the Debtors' estates and, accordingly, is in the best interests of the Debtors' estates and creditors.  Because the equipment is no longer needed, selling it will bring cash into the estates and save the costs of storing and preserving the assets.

31.     Hilco will implement the appropriate marketing strategies and advertisements in order to give interested buyers adequate notice.  The public nature of the auction will ensure that the sale price is fair and reasonable since purchasers will be bidding on the assets in a competitive environment.  Additionally, because Hilco will be acting as the auctioneer of the assets, all transactions will be completed at arms' length.  Accordingly, the Debtors believe that

11

the procedures outlined herein will permit the Debtors and Hilco to efficiently and expeditiously sell the assets.

32.     To maximize proceeds of the assets, the Debtors seek prospective approval of the sales of the assets without the need to seek further Court approval of each individual sale as contemplated by Rule 6004(f).   Because there will likely be numerous purchasers of the assets and those purchasers will expect to consummate their transactions and take possession of purchased assets immediately.

33.     Notwithstanding the foregoing, Hilco will require each purchaser to comply with the prohibitions of 18 U.S.C. §154(a), and shall, in furtherance of the goals of an arms-length sale, further require that all current or former "insider" of the Debtors not participate in the auction (absent court approval or Debtors' consent), or (if the Debtors' consent) that any sale to an insider requires court approval.

**Sale of the Assets Should be Free and Clear**

34.     The Debtors submit that it is appropriate that the assets be sold free and clear of liens, claims and encumbrances pursuant to Bankruptcy Code section 363(1), with any such liens, claims, encumbrances, or interests attaching to the sale proceeds thereof.   Bankruptcy Code section 363(1) provides:

> The trustee may sell property under subsection (b) or ( c) of this section free and clear of any interest in such property of an entity other than the estate, only if-
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

35.     Because section 363(1) is stated in the disjunctive, when selling property of the estate it is only necessary to meet one of the five conditions of that section.  *See In re Kellstrom Indus. Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(1) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens." citing *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988)).

36.     The Debtors submit that the sales of the assets will satisfy one or more conditions of Bankruptcy Code section 363(f). For example, the sales will satisfy section 363(f)(2) with respect to any entity with an interest in the assets that consents to the sales. Alternatively, the Debtors may sell the assets free and clear interests under section 363(f)(1) because applicable non-bankruptcy law permits sale of the assets free and clear of such interests or under section 363(f)(5) because entities holding such interests could be compelled to accept money satisfaction in legal or equitable proceedings.

37.     Accordingly, the Debtors request that the assets be sold and transferred to the purchaser(s) at the auction free and clear of all liens, claims, encumbrances, and other interests pursuant to Bankruptcy Code section 363(f).

## **RULE 6004(h)**

38.     The Debtors intend to hold the auction only after 14 days after the order approving the auction is entered.   Therefore, no waiver of Rule 6004(h) is proposed. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property

... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h).

**WHEREFORE**, the Debtor respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit B**, authoring engagement of the auctioneer and holding the auction and for such other further relief as is just and proper.

Dated: September 30, 2015.

McKool Smith, P.C.

By:    /s/ Hugh M. Ray, III
          Hugh M. Ray, III
          State Bar No. 24004246
          Christopher D. Johnson
          State Bar No. 24012913
          Benjamin W. Hugon
          State Bar No. 24078702
          600 Travis, Suite 7000
          Houston, Texas 77002
          Tel: 713-485-7300
          Fax: 713-485-7344

*Proposed Counsel for the Debtors and Debtors-in-Possession*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 30, 2015, a true and correct copy of this document was served via the ECF system to the parties on the ECF service list, including the United States Trustee, and to all parties on the Master Service List.

          /s/ Hugh M. Ray, III
          Hugh M. Ray, III